DECISION
{¶ 1} Defendants-appellants, Dan Crabtree and John Estep, appeal from a judgment of the Franklin County Court of Common Pleas, which granted judgment in favor of plaintiff-appellee, Richard Crabtree.
 {¶ 2} Evidence offered at the bench trial demonstrated the following relevant facts. Appellants and appellee were each officers and one-third owners of the shares of RJ Manufacturing, Inc. ("RJ"), an Ohio corporation. RJ began operating in 1999 and did business in the areas of metallurgy, machining and fabrication. Each of the three shareholders had a different expertise, and each utilized his personal industry contacts to acquire business clients for RJ.
 {¶ 3} In early 2000, appellants and appellee began to disagree regarding RJ business matters, and the relationship between the three shareholders deteriorated. On March 30, 2000, appellants signed documents to incorporate a new entity called Metalworks Hydra Assembly, Inc. ("Metalworks"). Appellants were the owners, officers and directors of Metalworks, and they purposely excluded appellee from the business. The intended purpose of Metalworks was to assume the RJ machining and fabrication business. Appellee did not know that appellants were forming the new entity. Appellants did not inform appellee about the new entity in order to facilitate the conversion of accounts, receivables and property by Metalworks from RJ.
 {¶ 4} By a memorandum dated May 8, 2000, appellants purported to dissolve RJ, effective April 24, 2000, although RJ neither filed a certification of dissolution nor liquidated its assets. It ceased doing business on May 19, 2001. Metalworks began its operations on May 21, 2000, in the facility that had been occupied by RJ. Metalworks utilized RJ's machines, equipment and employees. Appellee was not offered a position in the new corporation.
 {¶ 5} Appellee's son, a certified public accountant and partner in a full service accounting firm, offered expert testimony on appellee's behalf with regard to the valuation of RJ. Among other things, the expert testified regarding the fair market value of the corporation, including the value of goodwill, at the time that RJ ceased doing business.
 {¶ 6} By its decision, the trial court concluded that appellants were liable to appellee for breach of fiduciary duties, fraud and tortious business interference. The trial court awarded compensatory and punitive damages.
 {¶ 7} On appeal, appellants assert the following assignments of error:
 {¶ 8} "1. The Trial Court erred in awarding punitive damages to the Plaintiff without a finding that the Defendants committed actual malice against the Plaintiff.
 {¶ 9} "2. The Trial Court erred in computing the actual damages suffered by the Plaintiff."
 {¶ 10} The appropriate standard of review is whether the decision of the trial court is contrary to law. We will not disturb the trial court's judgment if it is "supported by some competent, credible evidence going to all the essential elements of the case." C.E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus. "`If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment.'" Estate of Barbieri v. Evans (1998),127 Ohio App.3d 207, 211.
 {¶ 11} By their first assignment of error, appellants contend that the trial court erred by awarding punitive damages without making an express finding that appellants committed actual malice against appellee. We disagree. We conclude that the court's findings and the record adequately establish the requisite malice.
 {¶ 12} In awarding punitive damages, the trial court expressly cited to Schafer v. RMS Realty (2000), 138 Ohio App.3d 244. The Schafer court stated that "punitive damages can be awarded for breach of fiduciary duty, just like other intentional torts, upon proof of actual or implied malice." Id. at 302. We conclude that the findings and the record in the instant matter sufficiently demonstrate proof of malice. The trial court expressly found that "[p]laintiff was purposely not informed [of the scheme to replace RJ with Metalworks] in order to facilitate conversion of accounts, receivables, monies and property by Metalworks from RJ." The record demonstrates that appellee was unaware of appellants' scheme until he saw a note posted on a bulletin board at the RJ facility and was told to "get the hell out." Based upon the findings and the record, we conclude that the trial court's award of punitive damages is supported by competent, credible evidence demonstrating malice. Because the award is supported by adequate evidence, we overrule appellants' first assignment of error.
 {¶ 13} By their second assignment of error, appellants contend that the trial court erred in two respects when it computed appellee's actual damages. First, appellants argue that the trial court erred when it determined that the value of goodwill of RJ was $18,656. Appellants contend that the trial court erred in relying upon testimony of appellee's accounting expert who, according to appellants, used "a miss-match of accounting procedures." We disagree.
 {¶ 14} By their argument, appellants attack the credibility of appellee's expert and the validity of his accounting procedures. Appellants, however, cross-examined appellee's expert regarding his bias and his analysis. Furthermore, appellants did not offer any expert testimony of their own to refute appellee's expert's methodology or conclusions. The evidence in the record, including the unrebutted testimony of appellee's accounting expert, supports the trial court's finding that RJ had goodwill in the amount of $18,656. We defer to the trier of fact's superior, first-hand perspective in judging the credibility of a witness. See State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Accordingly, we overrule in part appellants' second assignment of error with respect to the valuation of goodwill.
 {¶ 15} Second, appellants argue that the trial court improperly awarded $1,750 to appellee as compensation for $1,750 in personal bills that appellants paid from corporate funds. According to appellants, appellee is only entitled to a one-third share of the $1,750 in misappropriated funds, as appellee only owned one-third of the shares in the company. We agree.
 {¶ 16} Appellee filed this lawsuit in his capacity as a minority owner in RJ; this is not a derivative lawsuit on behalf of the corporation. As an owner of one-third of the company, appellee is entitled to corporate assets that reflect his one-third ownership in the corporation. See Bradley v. Bauder (1880), 36 Ohio St. 28, 35 (noting that corporate owners are entitled to their proportionate share of net corporate assets). The trial court concluded that appellants paid personal bills in the amount of $1,750 from the assets of RJ. Appellee is entitled to recoup his one-third share, or $583.33, of this improper use of corporate assets. We therefore sustain in part appellants' second assignment of error with regard to damages for the payment of personal bills out of corporate funds.
 {¶ 17} For the foregoing reasons, appellants' first assignment of error is overruled, and appellants' second assignment of error is sustained in part and overruled in part. The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court with instructions to modify the judgment with respect to compensatory damages for personal bills paid from RJ corporate funds to reflect that appellee is entitled to damages in the amount of $583.33, which reflects appellee's one-third interest in the funds.
Judgment affirmed in part, reversed in part and case remanded with instructions.
KLATT and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution